651 P.2d 105

**EL PASO ELECTRIC COMPANY, a
Texas corporation, et al.,
Plaintiffs-Appellees,**

v.

**REAL ESTATE MART, INC.,
Defendant-Appellant.**

**No. 5365.**

Court of Appeals of New Mexico.

July 20, 1982.
Rehearing Denied Aug. 5, 1982.
Certiorari Denied Sept. 16, 1982.

Stephen A. Hubert, Beverly J. Single-man, Martin, Lutz, Cresswell & Hubert, P. A., Las Cruces, for plaintiffs-appellees.

George T. Harris, Arthur D. Melendres, Zachary L. McCormick, Modrall, Sperling, Roehl, Harris & Sisk, P. A., Albuquerque, for defendant-appellant.

## OPINION

NEAL, Judge.

In this eminent domain case the jury awarded appellant $25,070.00 for a power line easement, and $1,000.00 for trespass damages. Appellant appeals. Five issues, all dealing with admission or exclusion of evidence, are raised:

1. The trial court erred in allowing the condemnor utilities to present two witnesses who were not listed in the pretrial order.
2. The trial court compounded this error when it refused to allow appellant to rebut evidence presented by Mr. Murray, one of the witnesses not listed in the pretrial order.
3. Evidence of settlement negotiation was admitted contrary to N.M.R. Evid. 408, N.M.S.A.1978.
4. Prejudicial error occurred during jury view of the property.
5. The trial court erred in modifying U.J.I. 7.11, N.M.S.A.1978.

We affirm.

1. Witnesses not listed in the pretrial order.

This claim involves two witnesses, Mr. Burleson and Mr. Murray. For the sake of clarity, and because the circumstances require it, we consider each witness separately.

*Burleson*

A pretrial order was entered pursuant to N.M.R.Civ.P. 16, N.M.S.A.1978, (1980 Repl.

Pamph.). The order did not list Mr. Burleson as a witness. Burleson was to be called on a Monday. On the previous Friday appellees moved the trial court to amend the pretrial order to add Mr. Burleson as a witness. Appellants were present at the hearing on the motion. The trial court allowed amendment of the pretrial order, and Mr. Burleson was added as a witness. In doing so, the trial court specifically directed appellees to make Burleson available for interview over the weekend.

Appellant relies on *State ex rel. S. Hwy. Dept. v. Branchau*, 90 N.M. 496, 565 P.2d 1013 (1977), and *El Paso Elec. Co. v. Pinkerton*, 96 N.M. 473, 632 P.2d 350 (1981). *Branchau* holds that, in an eminent domain proceeding, allowing an unexpected expert witness not listed in the pretrial order to testify is reversible error. In *Pinkerton* El Paso Electric presented its case first, and the landowner then presented his case. At the close of the landowner's case El Paso Electric called a witness not listed in the pretrial order. The witness testified as to the value of the land. Our Supreme Court held that this evidence was properly part of El Paso Electric's case-in-chief, and that the utility could not escape the requirement that it list its witnesses in the pretrial order simply by labeling property value evidence as "rebuttal." Rebuttal witnesses need not be listed in the pretrial order, *Martinez v. Rio Rancho Estates, Inc.*, 93 N.M. 187, 598 P.2d 649 (Ct.App.1979); rebuttal witnesses are those witnesses " 'whose testimony reasonably cannot be anticipated before the time of trial,' " *Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 630 P.2d 292 (Ct.App.), *cert. denied*, 96 N.M. 543, 632 P.2d 1181 (1981).

Appellant's reliance on *Branchau* and *Pinkerton, supra*, is misplaced. In both of those cases the witness was never listed in the pretrial order. Here the witness, Burleson, was added to the pretrial order two days before being called as a witness. The trial court, in its discretion, may amend a pretrial order when no unfairness will result. Rule 16, *supra; Tobeck v. United Nuclear-Homestake Partners*, 85 N.M. 431, 512 P.2d 1267 (Ct.App.1973).

No unfairness resulted here. Appellant had the opportunity to interview Burleson who was a partner of and a substitute for an expert witness listed in the pretrial order. There was no surprise. This further distinguishes this case from *Branchau* and *Pinkerton, supra.* In both of those cases there was no chance to pursue discovery. In that situation it would be unfair to allow the witness not listed in the pretrial order to testify. Here, however, appellant had knowledge of Burleson and an opportunity to interview Burleson to determine whether his testimony departed from that which would have been given by the expert for whom Burleson was a substitute.

*Murray*

Unlike Burleson, Murray was never listed in the pretrial order. Murray was called to impeach Roe Pleyte, an officer of appellant Real Estate Mart. During appellant's case-in-chief, Pleyte testified that the property was worth $648,426.00. Appellees, on cross-examination, asked Pleyte if he had ever stated, at a meeting in 1975, that the land was worth $350,000.00. He answered: "I don't remember that, no." Murray was later called by appellees; his direct testimony covers only two pages of the transcript. Murray was asked if, at a 1975 meeting, Pleyte had placed a value on the land. Murray testified that Pleyte had stated that the land was worth $350,000.00.

Appellants contend that *Branchau* and *Pinkerton* require reversal. Appellees contend that Murray was called to impeach Pleyte, and therefore his testimony comes within "rebuttal". We do not decide this question, however, because the issue has not been properly preserved.

At a chambers conference before Murray was called as a witness, appellees announced that Murray would be called as an impeachment witness and appellant was informed as to the content of Murray's testimony. At the conference, appellant stated that it did not know whether or not it would object. When Murray was called appellant objected claiming that Murray

was going to present evidence from settlement negotiation, in violation of Evidence Rule 408. The trial court overruled this objection. Appellant never objected on the ground that Murray was not listed in the pretrial order. This argument is being raised for the first time on appeal.

■ Objections must alert the trial court to error in order to preserve the issue for review. *Marquez v. Marquez*, 74 N.M. 795, 399 P.2d 282 (1965); *Hill v. Burnworth*, 85 N.M. 615, 514 P.2d 1312 (Ct.App.1973). Had appellant objected on the ground that Murray was not listed in the pretrial order, the trial court would have ruled on that issue. Having failed to alert the trial court to the pretrial order issue, appellant must suffer the consequences. Furthermore, arguments not raised in the trial court cannot be raised for the first time on appeal. *Wynne v. Pino*, 78 N.M. 520, 433 P.2d 499 (1967); *Batchelor v. Charley*, 74 N.M. 717, 398 P.2d 49 (1965). The claim that Murray was not listed in the pretrial order was not raised below, and will not be considered.

Whether or not Murray was improperly allowed to present evidence of settlement negotiation is discussed under point three of this opinion.

2. Refusal to allow appellant to rebut evidence presented by Murray.

Murray's direct testimony was limited to whether or not Roe Pleyte, at a meeting held in November 1975, valued the land at $350,000.00. Appellant conducted vigorous cross-examination of Murray. Appellant also wanted to introduce two letters and a memorandum to rebut Murray's testimony. Arguing that the two letters and the memorandum did not concern the November 1975 meeting, appellees objected. The trial court sustained the objection.

■ The scope of rebuttal testimony is within the discretion of the trial court. *Weiland v. Vigil*, 90 N.M. 148, 560 P.2d 939 (Ct.App.), *cert. denied*, 90 N.M. 255, 561 P.2d 1348 (1977); *Phillips v. Smith*, 87 N.M. 19, 528 P.2d 663 (Ct.App.), *cert. denied*, 87 N.M. 5, 528 P.2d 649 (1974). Rebuttal testimony should be limited to the matter in issue; a witness cannot state everything he recalls. *Nichols v. Sefcik*, 66 N.M. 449, 349 P.2d 678 (1960); *See, State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979).

■ The trial court did not abuse its discretion in refusing to admit the two letters and the memorandum into evidence. One of the letters was written by Mr. Pleyte in January 1975, eleven months prior to the November 1975 meeting. The other letter was written by Pleyte in April 1975. The memorandum was written by Mr. Pleyte on September 18, 1975, after a phone conversation. The trial court was justified in concluding that these three proffered exhibits were not sufficiently related to the matter in issue, the November 1975 meeting, to warrant their introduction as rebuttal evidence.

Appellant also claims that Mr. Pleyte was not allowed to testify in rebuttal of Murray's testimony. This is incorrect. Mr. Pleyte was not questioned concerning statements made by him at the meeting in November 1975 nor was a tender made as to any such statement. The questioning went entirely to the two letters and the memorandum properly excluded as evidence. Inasmuch as Mr. Pleyte was not questioned concerning statements made by him at the November 1975 meeting, the claim that Mr. Pleyte was not permitted to testify is a false issue. See Evidence Rule 103.

3. Evidence of settlement negotiation.

Murray testified about a meeting between appellant and appellees held in November 1975. He stated that, at that meeting, Pleyte valued the land at $350,000.00. Appellant objected contending that Murray's testimony was evidence of value presented during settlement negotiation and therefore inadmissible under Evidence Rule 408. We disagree.

Under Rule 408 evidence of settlement negotiation is not admissible to prove liability or the amount of the claim. The rule does not prohibit the introduction of all evidence derived from settlement negotiation. It states: "This rule [Rule 408] does

not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."

Rule 408 further provides: "This rule also does not require exclusion when the evidence is offered for *another purpose* * * *." (Emphasis added.) *Jesko v. Stauffer Chemical Company,* 89 N.M. 786, 558 P.2d 55 (Ct.App.1976), defining "another purpose," states that evidence of compromise " 'may be used to prove a consequential, material fact in issue other than validity or invalidity of the claim or its amount' ". Murray's testimony was used to impeach, not to establish the amount of the claim. Murray's impeachment testimony comes within "another purpose," and is admissible.

Moreover, when evidence which is admissible for one purpose but not for another is admitted (as is arguably the case here) the judge, upon request, shall limit the evidence to its proper scope and instruct the jury accordingly. N.M.R.Evid. 105, N.M.S.A. 1978. Fearing that the jury might consider Murray's testimony as evidence of value, appellant could have asked for an instruction explaining that they (the jury) should only consider Murray's testimony as impeachment evidence. Appellants did not ask for an explanatory instruction.

### 4. Alleged error during jury view.

The parties agreed to a jury view of the property. Appellant claims that two errors occurred during the view. First, it claims that appellees improperly marked one spot on the easement with red flags. Second, it claims that several jurors paced off distances, and that this independent evidence requires a new trial.

This case was previously appealed. *El Paso Elec. Co. v. Real Estate Mart,* 92 N.M. 581, 592 P.2d 181 (1979). The Supreme Court held that appellees were entitled to a 100 foot power line easement, and the case was remanded. One of the issues at trial was whether or not a road appellees had built to service the power line went beyond the 100 foot easement and encroached on appellant's land. The jury ultimately decided that it did, and awarded appellant $1,000.00 for trespass damages.

Appellant picked the spot where the jury view would take place. Appellees went out to the property and, at that spot, marked the boundaries of the 100 foot easement. Appellants objected to the flags, but the trial court allowed them to remain. At the spot picked by appellants the road was partly within and partly outside of the easement. Appellant was afraid that the jury would place undue emphasis on the spot marked by the flags, instead of considering the encroachment along the entire length of the easement.

N.M.R.Civ.P. 61, N.M.S.A.1978 (1980 Repl.Pamph.) provides:

No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

This rule applies not only to the district courts, but also to our appellate courts. *Hyde v. Anderson,* 68 N.M. 50, 358 P.2d 619 (1961); *Maxwell v. Santa Fe Public Schools,* 87 N.M. 383, 534 P.2d 307 (Ct. App.1975). A party must show prejudice before reversal is warranted.

Concerning the flags, we find nothing requiring reversal. Appellant picked the spot. Appellees marked it. There is no claim that the flags were in the wrong place or that the distance was improperly measured. The judge instructed the jury that the spot marked was not necessarily a typical spot. Appellant's contention that the flags would cause the jury to place undue emphasis on a single spot is without merit.

Appellant's second point is that three jurors paced off distances in the field. Appellant contends that this amounted to introduction of independent evidence requiring a new trial, relying on *Kaminski v. Kansas City Public Service Co.,* 175 Kan. 137, 259 P.2d 207 (1953), and *Cole v. McGhie,* 59 Wash.2d 436, 367 P.2d 844 (1962).

We are not persuaded by this argument. Juries "are permitted * * * to use their knowledge gained by such a view, not only to interpret the evidence offered in the case, but also as independent evidence of the facts as these appeared to them individually on the view." *Board of Com'rs of Dona Ana County v. Gardner,* 57 N.M. 478, 260 P.2d 682 (1953). We note that U.J.I. Civ. 7.23, N.M.S.A.1978 (1980 Repl.Pamph.), contains only the first part of the above quotation. We do not consider this as overruling the second part of the quotation. *See City of Truth or Consequences v. Pietruszka,* 81 N.M. 3, 462 P.2d 137 (1969) and *Board of County Com'rs of Dona Ana County v. Little,* 74 N.M. 605, 396 P.2d 591 (1964).

*Kaminski* and *Cole, supra,* are not controlling. In *Kaminski* some of the jurors, absent court supervision, went to the scene of the accident and paced off distances. Here the judge was present and supervised the jury view. In *Cole* the plaintiff tripped over a railing and brought a negligence suit. After hearing the evidence the jury was taken to the scene, at night, to reenact the accident. The Washington Supreme Court held that this was improper because, after hearing about the railing during three days of trial, all of the jurors were aware of the railing, and naturally none of them tripped over it; this was prejudicial to the plaintiff, who was trying to prove that the railing was improperly placed. The situation in our case is not as flagrant as the one presented in *Cole.*

■ Assuming *arguendo* that there was error, it was harmless. Appellant claims that three jurors paced off distances. Appellee claims that only one juror did this. The jurors (or juror) conducted the measurement at a single spot; there is no claim that extensive measurements were made over the entire property. After discovering that measurements were being made the judge told the jury not to do it again. Appellant argues that the judge should have instructed the jury not to consider evidence obtained by pacing, but does not represent that a request was made for such an instruction.

Every error does not warrant reversal, and we will not reverse absent a showing of prejudice. Appellant has not demonstrated sufficient prejudice to warrant reversal.

5. Modification of U.J.I. 7.11.

■ The instruction dealing with comparable sales in an eminent domain case is now U.J.I. 7.17, N.M.S.A.1978 (1980 Repl. Pamph.). At the time of trial, however, it was U.J.I. 7.11, N.M.S.A.1978, which stated:

The price paid for similar property *by one other than the condemnor* may be considered on the question of the value of the property condemned or damaged, provided you find there have been no material changes in conditions between the date of the prior sale and the date of taking, and provided further the prior sale was made in a free and open market. (Emphasis added.)

The trial court deleted the language underlined above. Appellant claims that modifying the U.J.I. was error requiring a new trial.

N.M.R.Civ.P. 51(D), N.M.S.A.1978 (1981 Supp.) allows the trial court to modify a uniform jury instruction when the facts or circumstances require it, and the trial court states its reasons for the change.

Appellant, through its own expert, introduced evidence of a comparable sale between the condemnor utilities and an adjoining landowner. The court modified U.J.I. 7.11 to explain to the jury how they should consider this evidence, and stated its reason for the modification. Appellant, by presenting this evidence, wanted the jury to consider the sale as evidence of value. The court, by modifying the instruction, allowed the jury to do just that. Having presented

evidence of another land sale, appellant cannot complain that the sale was an unfair measure of value, or that the instruction should not have been modified. *State v. Tanny*, 68 N.M. 117, 359 P.2d 350 (1961).

Finding no error, we affirm the judgment of the trial court.

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.